New-Haven,
July, 1851.

Bradley
v.
New-York
and New-Ha-
ven R. R. Co.

BRADLEY *against* THE NEW-YORK AND NEW-HAVEN RAIL-
ROAD COMPANY.

It is now established, by the uniform current of decisions, that the prop-
erty of individuals, taken by rail-road companies, and similar corpora-
tions, under their charters, is, from the public benefits resulting there-
from, to be deemed to be taken for *public use*, within the constitutional
provision upon that subject.

A rail-road company, though it derives its powers from the state, does not
act in behalf of the state, or as its instrument or agent, but under a spe-
cial grant, acquired for a valuable consideration, for the promotion of its
own direct and private advantage.

The rules of construction, applicable to general legislation, on subjects in
which the public at large are interested, are essentially different from
those which are applicable to private grants to individuals of powers and
privileges, conferred, and to be exercised, with special reference to their
own advantage, although involving, in their exercise, incidental benefits
to the community generally; as the former are to be expounded largely
and beneficially for the purposes for which they were enacted, while the
latter are to be construed strictly, as against the grantees.

A law enacted for the common good, and which there is, ordinarily, no
inducement to pervert from that purpose, is to be viewed, with less
jealousy and distrust, than one enacted to promote the interests of partic-
ular persons, and constantly presenting motives for encroaching on the
rights of others.

The charter of incorporation of a rail-road company provided, that it
should be lawful for the company to enter upon and use all such real es-
tate as should be necessary for them; that they should be holden to pay
all damages that should arise to any person or persons; and if the per-
son or persons to whom such damages should so arise and said company
could not agree as to the amount of such damages, three judicious and
disinterested free-holders should be appointed, by the superior court, who
should assess just damages to the person or persons whose real estate
should be taken or injured; that the rail-road should not be opened
across the land of any person, until the damages assessed should have
been paid, or secured to be paid; that whenever it should be necessary
for the construction of their road to intersect any highway, the compa-
ny were authorised to construct it across or upon such highway, but they
were required to restore it to its former state, or in sufficient manner not
to impair its usefulness. *B*, owning a building and land on a street in
*New-Haven* intersected by said rail-road, brought his action against the
company, alleging that they had made a large excavation for the bed of
their rail-road in the land adjoining the plaintiff's, and so near his build-
ing and so deep, as to weaken its foundation, and render it unsafe for
use, and raised in the street, opposite to and near the front of said build-
ing, an embankment of much greater heighth than the street was before,
thereby obstructing the passage to and from his building, darkening the
windows, obstructing the air and rendering the building unfit for occupa-
tion. The defendants justified under their charter, averring, that they

paid, before the doing of the acts complained of, all the damages caused by the construction of their road, to the owners of real estate within its limits. On a demurrer to the plea, it was held, 1. that the acts of the defendants did not constitute a *taking* by them of the property of the plaintiff, within the meaning of the constitution of this state, or of the charter of the defendants; 2. that under the charter of the defendants, persons whose property had not been taken, in this sense of the term, but who had sustained incidental or consequential damages, by the authorised works of the defendants, were entitled to compensation; 3. that as the injuries to the plaintiff, resulting from the acts complained of, were of the latter description, and as no compensation had been made for injuries of this character, the plaintiff was entitled to recover.

*New-Haven,*
July, 1851.

Bradley
*v.*
New-York
and New-Haven R. R. Co.

THIS was an action on the case.

The declaration stated, that the plaintiff, being seised in fee and possessed of the piece of land in the city of *New-Haven,* therein described, with a building thereon, occupied by him, as a blacksmith, the defendants, on the day therein mentioned, and on divers days and times between that day and the bringing of the suit, wrongfully and injuriously, and without taking reasonable care to prevent the injuries thereinafter mentioned, made a large excavation for the bed of a certain rail-road, by the defendants there constructed, in the land next adjoining the *Eastern* boundary of the plaintiff's land, and along the whole length thereof, and so near his said building, and so deep, as to weaken the foundation thereof, and render it unsafe for use; and run over the bed of said rail-road a great number of heavy cars and engines, thereby shaking the walls of said building; and wrongfully and injuriously raised in the street along opposite to and near the front of said building, an embankment of earth and other materials in and upon the street bounding the plaintiff's land on the *North,* of much greater height and elevation than said street was before raised, and so near to said land and building, that ever since, the plaintiff and his customers have thereby been obstructed, prevented and hindered from passing, and from transporting goods from said street to said building, and from said building to said street, as they were before accustomed to do; and the door of said building near said street through which they were before accustomed to pass, and transport goods as aforesaid, and the lights and windows through which the light and air before came from said street to said building, have been obstructed, closed and darkened; and that also, by reason of

New-Haven,
July, 1851.

Bradley
v.
New-York
and New-Ha-
ven R. R. Co.
said acts of the defendants, the foundations of said building are weakened, the walls thereof next to said rail-road sunk, settled, cracked and insecure, the said building rendered useless and unfit for occupation, the plaintiff broken up in his business, and his said land and buildings become of no value.

The plea alleges, that the *New-Haven and Northampton Company,* an existing incorporated company of this state, being authorised and empowered, by a resolution of the legislature of this state, passed in 1846, (and recited in the plea,) to make and construct a rail-road from some convenient point, on or near the canal basin in the city of *New-Haven,* through said city, and to the *North* line of the state, in a route therein mentioned, (but which it is not material here particularly to describe,) located the said rail-road within the limits described in the plea; and that the space embraced within said limits passes near to the *Easterly* line of the land described in the declaration, but not including any portion thereof; that said location was, by order of the directors of said company, surveyed, by the engineer of said company, and approved by the commissioners on said road appointed by the legislature, after notice given according to the provisions of said resolution; that on the application of said company, the legislature, by a resolution passed in 1848, (and recited in the plea,) approved and confirmed the proceedings of said company, in so locating said rail-road, authorized said company to make and construct the said road within said limits, made valid and effectual the said location, in the same manner and to the same extent, as if said authority had been conferred by said resolution of 1846, and, in regard to the construction and use of said road, authorised said company to exercise and enjoy all the rights, powers and privileges, and subjected said company to all the liabilities and restrictions, conferred and imposed by said resolution of 1846; that all the damages caused by said location and the construction of said road to the owners of land or other real estate lying or being situate within the limits aforesaid, were paid, by said company, to said owners, before the doing of the acts complained of in the declaration. The plea then states, that on the 24th day of *March,* 1848, the said company demised, leased, and to farm let all

the said premises, *viz.*, all the said location of said *New-Haven and Northampton Company* between the said canal basin and a point *North* of said land of the plaintiff, to the defendants, from the first day of *April*, 1848, forever, with covenants of warranty and quiet enjoyment, whereby the the defendants became and were, at the time when, &c., entitled to make, construct and use a rail-road upon said premises, as said *New-Haven and Northampton Company* were, at the time of the execution of said lease, or would, at any time thereafter, have been entitled to do ; and, further, that by two resolutions, passed by the legislature, in 1844 and 1846, (which are recited in the plea,) the defendants were incorporated, and authorised to construct a rail-road from some suitable point in the city of *New-Haven* to the city of *Bridgeport*, and thence to the *West* line of this state ; and that they did, according to the provisions of their said charter, locate a portion of their road over and upon the same premises on which said location was made, by the said *New-Haven and Northampton Company ;* and that said location so made by the defendants, was approved, by the commissioners on the road appointed by the legislature. The plea then alleges, that the defendants, at the said time when, &c., in the construction of a rail-road over said location, necessarily made the excavation in the declaration complained of, for the bed of said rail-road upon said location, and near to the *Easterly* side of the said building of the plaintiff, doing no unnecessary damage ; and in the necessary use of said rail-road, since the same was built by the defendants, did run over the bed of said road cars and engines, as complained of in the declaration ; and also, that the said *New-Haven and Northampton Company*, by said resolutions in their favour, and the defendants, by said lease and by their charter, being authorised, whenever it should be necessary for the construction of their rail-road, to intersect any road or highway, to construct said rail-road across the same, restoring it to its original state, or in sufficient manner not to impair its usefulness, it became and was necessary for the defendants, in constructing said rail-road, to intersect a certain highway or road, called *Fair* street, and in restoring said street to its former state, in sufficient manner not to impair its usefulness, to construct a bridge

New-Haven,
July, 1851.

Bradley
*v.*
New-York
and New-Haven R. R. Co.

New-Haven,
July, 1851.
———————
Bradley
v.
New-York
and New-Ha-
ven R. R. Co.

over said rail-road, at the place of said intersection, on which travellers, passing along said street, could conveniently and safely pass said rail-road, and to construct and raise an abutment on the *West* end of said bridge, and an embankment of earth, &c., with a gradual and suitable slope *Westerly* from said bridge in said street, in front of said building of the plaintiff; and that the defendants, at the said time when, &c., made the said embankment, being the same complained of in the declaration, for the purposes aforesaid, doing no unnecessary damage.

To this plea there was a demurrer.

The case was reserved for the advice of this court.

*R. I. Ingersoll* and *Baldwin*, for the plaintiff, contended,
1. That it was not shewn by the plea, that the defendants have ever paid, or agreed to pay, damages, or had damages assessed, to any one, whose real estate may have been "taken or injured" on the route through the city of *New-Haven*. This is required of them, by their charter. See *Private Acts* of 1844, *p.* 59. Although the *New-Haven and Northampton Company* had previously located their road on this route, and paid such damages as were assessed for the construction of *their* road; yet when the defendants locate another road, under another charter, over the same land, they must comply with the requirements of their own charter, and pay the land-owners, for the additional injury that may be occasioned. *Trustees of Presbyterian Society in Waterloo* v. *Auburn and Rochester Railroad*, 3 *Hill*, 568.

2. That the ninth section of the defendants' charter requires, " That the commissioners on said rail-road, within three days after approving the route thereof within said cities of *New-Haven* and *Bridgeport*, shall lodge with the clerks of said cities respectively, a written description of the route approved by them, within the limits of said cities, which shall be and remain the route of said rail-road, unless within 30 days after said description is so lodged with said clerks, either of said cities, at a meeting legally warned for the purpose, shall appeal from the doings of the said commissioners to a judge of the superior court," &c. *Private Acts*, 1844, *pp.* 64. 65. The defendants in their plea do not pretend, that this has been complied with; and without it, they could have no right to make the excavation, or raise

the embankment complained of. Again, the same section *New-Haven,*
July, 1851. declares : " That after said route of said rail-road shall have been finally established as aforesaid, said corporation shall construct that part of said road within the limits of the cities of *New-Haven* and *Bridgeport,* under the direction of the common council of said cities respectively." They have not constructed their road under the direction of the common council ; and therefore, they must be held responsible for the damages they occasion, to individuals in the city of *New-Haven.*

Bradley
*v.*
New-York
and New-Haven R. R. Co.

It is said, however, that they worked under the charter of the *New-Haven and Northampton Company,* and not under their own charter. Even if that could be done, it would not deliver them from their responsibility ; for the charter of the *New-Haven and Northampton Company* requires ; that part of the road within the city of *New-Haven,* to be constructed and used " in such manner and subject to such rules and regulations as the common council of said city shall prescribe." *Private Acts,* 1846, ◊ 5. *p.* 88. But where is the authority of the *New-Haven and Northampton Company* to give a perpetual lease of their franchise ? The legislature have conferred upon them no such power. The grant is to *them,* not to their assigns.

3. That if, however, the plaintiff is wrong in these views, and if the defendants have acted within the scope of their own charter, still they are responsible in damages for the injury the plaintiff has received ; and this too, although the real estate of the plaintiff has not, strictly speaking, been " taken." This seems to have been well settled in our neighbouring states, *New-York* and *Massachusetts. Fletcher* v. *The Auburn and Syracuse Rail-road,* 25 *Wend.* 462. *Dodge* v. *County Commissioners,* **3** *Metc.* 380. *Ashley* v. *The Eastern Rail-road Company,* 5 *Metc.* 368. *Baptist Church of Schenectady* v. *Schenectady and Troy Rail-road,* 5 *Barbour,* 79. The same principle has also been, again and again, recognised by our own courts. *Hooker* v. *New-Haven and Northampton Company,* 14 *Conn. R.* 146. S. C. 15 *Conn. R.* 318. *Denslow* v. *New-Haven and Northampton Company,* 16 *Conn. R.* 98. *Enfield Bridge* v. *Hartford and New-Haven Rail-road Company,* 17 *Conn. R.* 454. In *Hooker* v. *Northampton Company,* 15 *Conn. R.* 318. *Williams,* Ch. J.,

New-Haven,
July, 1851.

Bradley
v.
New-York
and New-Ha-
ven R. R. Co.

in view of all the authorities, says : " But the case has not been produced (unless it be that of *Hollister* v. *Union Company*, 9 *Conn. R.* which may fairly be placed on other ground,) where individuals or corporations who are to derive a profit to themselves from an injury done voluntarily to others, are to be protected in doing such injury without compensation, *unless done by the power of an unrestricted legislature*." The land in that case had not been "*taken*"— though it had been *injured*, and the charter that he was then considering, only had reference to land "taken." With how much greater force would this language be applicable to a case like the present, where the charters of both companies expressly extend the responsibility in damages for land "taken or INJURED." See *Private Acts*, of 1844, § 7. *p.* 62. And *Private Acts* of 1846, § 3. *p.* 86. See also *Enfield Bridge* v. *H. & N. H. R. R. Co.*, above cited. *Turner & al.* v. *Sheffield & Rotherbane Rail-road*, 10 *Meeson & Welsby*, 425.

*Kimberly* and *Dutton*, for the defendants, insisted, That they were not liable to the plaintiff for damages. In support of this position, they contended, 1. That the legislature had authorised the defendants to do all that they have done ; and have not provided, in such cases, for the assessment and payment of damages.

First, the defendants are authorised to locate and construct a rail-road over the place in question, and to run cars and engines over the road, by the force of steam or otherwise. See *Charter*, § 1. 7 and 9.

The defendants then had the right to excavate the bed of the rail-road near the building of the plaintiff, and to use it as they have done, without responsibility, for the reasonable exercise of that right. *Thurston* v. *Hancock*, 12 *Mass. R.* 220. *Panton* v. *Holland*, 17 *Johns. R.* 92.

Secondly, the defendants were authorised, (when necessary to cross any highway,) to construct the road over or across the same. See *Charter*, § 10. It being admitted, that it became necessary to cross the street, and to erect the embankment, in order to restore the street to its former usefulness, the defendants are justified in this particular.

Thirdly, the charter, or act of incorporation, provides for

provision of the constitution of this state, prohibiting the *New-Haven, July, 1851.* the payment of damages *only* to the persons whose *lands* or *real estate* have *been taken* and *appropriated.* See *Charter,* § 1. 7 and 8.

*Bradley v. New-York and New-Haven R. R. Co.*

2. That the charter, or act of incorporation, conferring the authority to do the acts complained of, without providing an indemnity, is a constitutional act.

First, the 11th section of the first article of the constitution of this state provides, that " the property of no person shall be *taken* for public use, without just compensation therefor." With this provision of the constitution, the act of the legislature is, and was intended to be, in precise accordance.

Secondly, rail-roads, highways and turnpikes are to be regarded as *public works,* and the public benefit is the ultimate end and object of all the powers conferred for their construction, preservation and use. *Newburyport Turnpike Corporation* v. *Eastern Rail-road Company,* 23 *Pick.* 327.

Thirdly, it is the settled construction of the constitution, and of acts of the legislature like that under consideration, that these provisions regarding compensation to individuals, do not extend to cases of indirect and consequential injuries, but are confined to cases of property *actually taken* and appropriated, by the government. *Hollister* v. *Union Co.* 9 *Conn. R.* 436. *Bridgeport* v. *Housatonuc R. R. Co.* 15 *Conn. R.* 475. *Stevens* v. *Middlesex Canal,* 12 *Mass. R.* 468. *Callender* v. *Marsh,* 1 *Pick.* 429. *Steele* v. *Western Inland Lock Nav. Co.* 2 *Johns. R.* 283. 286. *Lansing* v. *Smith,* 8 *Cowen,* 146. *Monongahela Nav. Co.* v. *Coons,* 6 *Watts & Serg.* 101. *Keasy* v. *Louisville,* 4 *Dana* 154. Case of *Phil. & Trent. R. R. Co.* 6 *Whart.* 25. See also the cases of *Hudson River R. R. Co., New York; Long Island R. R. Co., Brooklyn; Rome & Oswego Plank-road, Utica.* British *Cast Plate Manufacturers* v. *Meredith,* 4 *Term R.* 794. *Boulton* v. *Crowther,* 2 *B. & C.* 703. (9 *E. C. L.* 227.) *Sutton* v. *Clarke,* 6 *Taunt.* 29.

STORRS, J. From the pleadings in this case, it appears, that the justification set up by the defendants, for the acts complained of, is founded on the powers conferred upon them by their charter, and also on the power conferred on the *New-Haven and Northampton Company,* by the charter

*New-Haven,*
July, 1851.

Bradley
*v.*
New-York
and New-Ha-
ven R. R. Co.

of the latter company, and the authority claimed to be conveyed to the defendants, by that company, in the lease of the location of their rail-road where it passed by the lands of the plaintiff. So far as the provisions of the charters of these companies, and the resolutions of the legislature, are particularized in the plea, they appear, by a reference to them, to be correctly stated.

In the views which we take of this case, it is not necessary to consider the question of the validity of that lease, nor whether the effect of it was to transfer to the defendants the interest which the *New-Haven and Northampton Company* acquired, by the location of their rail-road, in the lands within its limits, adjacent or near the plaintiff's land, so as to invest the defendants with the rights and powers of that company in the land embraced within such location. If it be conceded, that the lease was valid and effectual for that purpose, our decision, as will be perceived, is placed upon grounds which would be entirely unaffected by that circumstance.

There is a difference in the charters of the two companies, in one respect, namely, that there is no provision in the charter of the *New-Haven and Northampton Company* like that in the charter of the defendants, which requires that the commissioners on the rail-road of the latter shall lodge with the clerks of the city of *New-Haven* a written description of the route approved by them within the limits of that city, upon which a point has been made in the argument. Our decision has no reference either to that, or to any other difference in the charters of these companies, but is grounded entirely on the constructions of other provisions contained in these charters, which will be hereafter more particularly stated, and have no reference whatever to those differences, but which relate only to the assessment and payment of damages to persons injured by the defendants in consequence of the construction of their rail-roads. The terms of those provisions are exactly the same, even in their very phraseology, in the charters of both of these companies, and should undoubtedly receive the same construction in regard to the kinds of injury for which they require such damages to be assessed and paid. The only averment in the plea, respecting the payment of such damages, is, that all the damages,

caused by the location by the *New-Haven and Northampton*
*Company* of their rail-road and its construction, to the own-
ers of land or other real estate lying or being situate within
the limits of said road, were paid by that company to said
owners, before the doings of the acts in the declaration
complained of.   The plea does not allege, whether the road
last-mentioned, the damages caused by the location and con-
struction of which, were then paid, was constructed by that
company, or by the defendants ; nor does it state very dis-
tinctly, whether the rail-road and embankment, made by
the defendants, as therein mentioned, and in the construc-
tion of which, the acts were done, of which the plaintiff
complains, were constructed by the defendants, under or by
virtue of their own charter, or of that of the *New-Haven
and Northampton Company*, and the lease by the latter, to
the defendants.   For the purposes of this case, it is not nec-
essary to determine the true construction of the plea in this
respect, or any of the questions arising on the construction
of it, as it might be claimed by either of the parties ; be-
cause, if it be conceded, that the defendants were intrusted
with all the powers and rights conferred upon each of these
companies, by their charters and the resolutions of the legis-
lature referred to in the plea, the facts therein alleged con-
stitute no justification for the acts complained of, in the
declaration, if the injury produced by those acts, is of such
a character, that, by the terms of those charters, the plain-
tiff was entitled to have damages therefor assessed and paid
to him.   And on the supposition that the defendants united
in themselves all the rights and powers conferred, and the
obligations imposed, by the charters of both these compa-
nies, we may, for convenience hereafter pass by the *New-
Haven and Northampton Company*, and speak only of the
defendants and their charter, as the provisions, upon which
our decision depends, are the same in each charter.

The averment in the plea, that the damages, caused by
the location and construction of the road to the owners of
lands or other real estate lying or being situate within the
limits of the road, were paid to said owners, before said acts,
were committed, obviously does not embrace the plaintiff;
since his land and building, which he claims were injured,
by the acts complained of, were not situated within the lim-

*New-Haven,*
July, 1851.
———————
Bradley
*v.*
New-York
and New-Ha-
ven R. R. Co.
its of the rail-road. It is not alleged in the plea, that damages were assessed or paid to the owners of any other property than that over which the rail-road was then located. If, therefore, that is the only species of property, for damages to which, the charter, under which the defendants justify, requires them to make compensation to the owner ; or if, notwithstanding the charter does not limit such compensation to damages to property situated within the located limits of the rail-road, it does not require compensation for the particular kind of damages alleged to be sustained by the plaintiff, the plea is, in this respect, a good justification for the acts complained of.

The question then arises, which is the first presented to us on the argument, whether the defendants, by the terms of their charter, are required to cause the damages occasioned to the plaintiff, by the acts complained of in the declaration, to be assessed and paid to the plaintiff, in order to justify said acts. The decision of this question must, of course, depend entirely upon the true construction of that charter. Each of these companies derives its existence from its charter, has no other power or authority than its grant, and is subject to all the duties and liabilities which it imposes. It binds itself, by its aceptance of the grant, to the fulfillment of all these obligations, and in the manner which it prescribes.

It is not important here to enquire, whether the legislature, by virtue of the power of eminent domain, with which it is entrusted by the people in the constitution, might not, for the use of the public, by a particular law, have constructed, under its immediate direction and by a direct agency, the rail-road, which, by the charter granted to these defendants, it authorizes them to make, or, by a general law, required and empowered subordinate bodies to lay out, establish, and make similar rail-roads, whenever the public convenience and necessity required them, as they have done in regard to ordinary public highways, (*b*) without providing compensation for any damages occasioned thereby to individuals, excepting those of a direct and immediate character, occasioned by a taking of their land for that purpose, which it would clearly be necessary to provide compensation for, under the

.(*b*) See *Clark* v. *Saybrook*, post 313.

taking of private property for public use, without just com-<span></span> *New-Haven,* July, 1851.

pensation.   If the legislature possesses a power thus unre-

stricted, excepting in the particular last mentioned, which <span></span> Bradley

we perceive no reason to doubt, and had proceeded to exer-<span></span> v<br>New-York<br>and New-Ha-

cise it, whatever might be thought of its expediency or gen-<span></span> ven R. R. Co.

eral justice in regard to the private interests of individuals affected by its exercise, and the defendants had acted under such an authority, in doing the acts complained of, the question before us would have been quite different in its character, and depended on different considerations, from that which we are now considering.   The defendants, in that case, would have acted merely as the constituted agents or instrumentality of the legislature, which would itself have been only the representative or instrumentality, so to speak, of the people, or sovereign power of the state, and within the scope of the authority conferred by the law under which they thus acted, would be invested with all the rights and powers of the state.   The question, therefore, arising between an individual, claiming to be injured by their acts, and the defendants, apart from any claim of their having exceeded their authority or abused it, would be one between such individual and the state ; and not only so, but between him and the state exercising its rights and powers, not in any respect, for the promotion of the private interest of any particular person, whether natural or artificial, but only for the general benefit of the state.

The defendants, however, in this case, justify under no act of that description ; but only under a private grant from the legislature, conferring upon them certain specified and qualified powers, for their own special advantage ; although indeed it is now established, by the uniform current of decisions, that the public benefit may be so far promoted by the works authorised to be made by such corporations as the defendants, that the property of individuals, authorised to be taken by them by their charter, shall be deemed to be taken for public use, and therefore is the necessary subject of compensation, under the provision of the constitution relating to the taking of private property for public use ; and indeed, upon any other theory, private property could not be taken at all by the defendants, since it must be considered to be taken only for private use, which it would not be within the

*New-Haven,*
July, 1851.
───────
Bradley
*v.*
New-York
and New-Ha-
ven R. R. Co.

competency even of the legislature to sanction, either with or without compensation, as it would be merely to authorise the taking of the property of one person and transferring it, without his consent, to another, for the private use of the latter : which would not be an act of legitimate legislation, under any circumstances.

The defendants, although acting indeed under an authority derived from the state, do not act, properly speaking, in its behalf, or as its agent or representative, nor with a special reference to the benefit of the public, as is the case when roads or other public improvements are made under the immediate direction and superintendence of the state, or its agents, constituted for that purpose, and for the general accommodation or benefit of the community ; but under a special grant of power, deemed to be acquired from the state, for a valuable consideration, and for the promotion of their own direct and private advantage.

Such being the nature of the grant contained in the charter of the defendants, and upon which they rely, and which is the same in its character, construction, and effect, as if made to one or more natural persons not clothed with corporate privileges, the question which we are now considering becomes one, not between an individual and the state, but merely between one individual and another, and depending on the extent and qualifications of the charter of the defendants and the obligations upon them imposed by that instrument.

Before we proceed to examine the provisions of the defendants' charter, upon which, the question now before us depends, it is important to observe, that the rules of construction, which apply to general legislation in regard to those subjects in which the public at large are interested, are essentially different from those which apply to private grants to individuals, of powers or privileges designed to be exercised with special reference to their own advantage, although involving, in their exercise, incidental benefits to the community generally. The former are to be expounded largely and beneficially for the purposes for which they were enacted ; the latter liberally in favour of the public, and strictly as against the grantees. The power, in the one case, is original and inherent in the state or sovereign power, and

is exercised solely for the general good of the community:
in the other, it is merely derivative; is special, if not
exclusive, in its character; and is in derogation of common
right, in the sense that it confers privileges to which the
members of the community at large are not entitled.    Acts
of the former kind, being dictated solely by a regard to the
benefit of the public generally, attract none of that preju-
dice or jealousy towards them, which naturally would arise
towards those of the other description, from the considera-
tion that the latter were obtained with a view to the benefit
of particular individuals, and the apprehension that their in-
terests might be promoted at the sacrifice, or to the injury,
of those of others whose interests should be equally regar-
ded.   It is universally understood to be one of the implied
and necessary conditions upon which men enter into society
and form governments, that sacrifices must sometimes be
required of individuals for the general benefit of the com-
munity, for which they have no rightful claim to specific
compensation; but, as between the several individuals com-
posing a community, it is the duty of the state to protect
them in the enjoyment of just and equal rights.   A law,
therefore, enacted for the common good, and which there
would ordinarily be no inducement to pervert from that
purpose, is entitled to be viewed with less jealousy and dis-
trust than one enacted to promote the interests of particular
persons, and which would constantly present a motive for
encroaching on the rights of others.

We now come to a brief examination of those provisions
of the defendants' charter, which bear on the question before
us.   Those provisions are contained in the first section of
that charter, which corresponds with the first section of the
charter of the *New-Haven and Northampton Company*, and
to the seventh section of the defendants' charter, which cor-
responds with the third section of the charter of the other
company, the language in these corresponding sections being
identical.   We will refer, for convenience, only to the char-
ter of the defendants.

The 1st section, after incorporating the defendants, and
authorizing them to locate, construct, and finally complete
the rail-road therein described, and to transport, &c., thereon
property and persons, as therein mentioned, provides, that,

*New-Haven,*
July, 1851.

Bradley
*v.*
New-York
and New-Ha-
ven R. R. Co.

for the purpose of constructing said road, they may lay out the same, not exceeding six rods wide, through the whole length, and for the purpose of cuttings and embankments, and of necessary turn-outs, and for obtaining stone and gravel, " may take as much more land as may be necessary for the proper construction and security of said road ;" with a proviso, "that all damages that may be occasioned to any person or corporation, by the taking of any such land or materials aforesaid, for the purpose aforesaid, shall be paid for, by said company, in the manner thereinafter provided." All the provisions in the charter relating to the ascertainment, assessment, and payment of damages to persons occasioned by said road, are contained in the 7th section. That section, after providing, that the company, by their agents, &c., may enter upon such route or places as shall be designated by the directors, and approved by the commissioners therein mentioned, after the prooceedings therein directed, provides, that it shall be lawful for the company to enter upon and use all such land and real estate as. may be necessary for them, in the manner and for the purpose set forth in the first section.   It then declares, " *that said company shall be holden to pay all damages that may arise to any person or persons*."   Then follows this provision : " and if the person or persons, to whom damage may so arise, and said company cannot agree as to the amount of such damage, it shall be the duty of said company to apply to the superior court of the county in which the real estate damaged may be situated, and to cause notice to be given to the adverse party of such application ;  and thereupon said superior court shall appoint three disinterested and judicious free-holders to assess the amount of such damages ; and said freeholders, after being sworn, shall give notice to the parties of the time and place of their meeting, on the business of their appointment, at which time and place they shall proceed to hear the parties, and enquire into the extent of damages, and shall assess just damages to the person or persons whose real estate may be *taken or injured*, which assessment shall be in writing, under the hands of said freeholders."   It then goes on to declare, that said assessment shall be returned to the clerk of said court and recorded,— its effect when so recorded,—that said rail-road shall not be

opened across the land of any person until the damages *New-Haven,* July, 1851.
assessed shall have been paid, or secured to be paid, to his
satisfaction, and within what time said damages shall be *Bradley*
paid or deposited with the treasurer of the county. In a *v.* New-York and New-Ha-
subsequent section, (*sect.* 10.) the company is authorized, ven R. R. Co.
whenever it shall be necessary for the construction of their
road, to intersect any road or highway, to construct said
rail-road across or upon the same : but they are required to
restore said road or highway thus intersected to its former
state, or in sufficient manner not to impair its usefulness.
We perceive no other provision in the charter, which has
any material bearing on the question now before us.

We are of opinion, that the acts of the defendants, as
disclosed in the pleadings, in this case, do not constitute a
taking by them of the property of the plaintiff, within the
meaning of that term, as used in the provision of our consti-
tution, which has been adverted to. Nor do we see any reason
for believing, that any other meaning was intended to be
attached to it, in the charter of the defendants. It would
clearly apply to land on which the rail-road was located, or
which was used for the purpose of cuttings and embank-
ments, or of turn-outs, or of obtaining stone and gravel, as
provided for in the first section ; because, in these cases, the
owner would be deprived of his property, and it would be
directly appropriated, by the defendants, to their own use.
The damage alleged to have been sustained, by the plaintiff,
is not, however, of that description. He does not complain,
that his property has been taken from him, or appropriated
to the use of the defendants ; but that his enjoyment of it
is materially and injuriously impaired, by their acts. He
retains his land, but its value is diminished, by those acts.
The damage he receives is not of a direct or immediate, but
of a consequential or incidental character. For such dam-
age, although it does not amount to a technical taking of
his property, we are of opinion that it was the intention of
the legislature to provide, that he should receive compensa-
tion from the defendants, by that clause in their charter,
which provides, that they "shall pay all damages that may
arise to any person or persons." The clause is elliptical, but
was obviously intended to apply to damages occasioned by
the construction of the defendants' road, and also, as we

*New-Haven*,
July, 1851.

Bradley
*v.*
New-York
and New-Ha-
ven R. R. Co.

have no doubt, to the embankment extending laterally from the bridge over the highway crossed by the rail-road, which is incident to and connected with the rail-road, and is as much a part of the structure authorised by the charter of the defendants, as the rail-road itself, and the right of making which, equally with the right of constructing the rail-road, forms a part of the franchise granted to them. The raising of the bridge was necessary, in order to allow of the passing of the engines and cars on the rail-road; and the making of the embankment was necessary, in consequence of the raising of the bridge, in order to restore the highway to its former usefulness, which it was made the duty of the defendants to do; and both were raised for the sole benefit and accommodation of the defendants, and not of the public. And as both of them are parts of the same enterprise, there is, moreover, no reason, in justice, why a person should not have compensation for incidental damage sustained by him, in consequence of the construction of one as well as the others. The clause of the charter which we last recited, is very broad and unqualified in its terms, both as to the kinds of damage for which the company shall pay, and the persons who shall be paid; it embraces "all damages," and therefore, not only those which are direct, but those also which are incidental; and "damages to any person or persons;" and therefore, those who are owners of land over which the rail-road is located, as well as those who are not.

If this were the only clause in the charter which designated the kind of damage for which compensation should be made to individuals, and the description of persons entitled to it, there could be no doubt that it would embrace the damages alleged to be sustained by the plaintiff. These expressions should receive their ordinary and obvious signification, unless it appears from the other parts of the charter, that they were intended to be used in a restricted sense. And no such qualification can be suggested, excepting that which should restrict them to the kind of damage which had been previously mentioned, and which would arise from taking the land of individuals for the purposes mentioned in the first section, that is to say, for the location of the rail-road, or cuttings and embankments, or turn-outs, or for obtaining stone and gravel. Such a construction, however, we think

is inadmissible.   First, there is no reference in the clause to
the causes of damage which had been previously mentioned,
or to the persons before mentioned, by whom such damage
might be sustained.   In the next place, the language of the
clause is not such as would be naturally used, if it was in-
tended to be thus restricted.   Thirdly, this clause was en-
tirely unnecessary, and would be mere repetition, if it was
designed only to embrace the causes of damage, which had
been mentioned in the first section ; because it had been
already provided in that section, that all damage occa-
sioned to any person or corporation, by the taking of land
or materials, should be paid by the company.   In the fourth
place, the provision immediately succeeding this clause,
which prescribes in what manner damages arising to indi-
viduals, shall be assessed, declares, that the assessors "shall
assess just damages to the person or persons whose real es-
tate may be taken *or injured ;*" thus shewing most clearly,
that the clause in question, with which that provision is
most closely connected, was not intended to be limited ex-
clusively to land which should be taken or directly affected.
Such a restricted construction of it would, moreover, be
opposed to the rule of exposition before adverted to, which
applies to grants of this description.   We think, therefore,
that incidental or consequential damages are embraced in
this clause.   We do not, however, intend to include merely
fanciful or speculative damages, but only those of an actual,
substantial, definite, and appreciable character.   That dam-
ages of the latter description are embraced in the allegations
of the declaration, in this case, admits of no doubt.

We are strongly confirmed, not only in the construction
which we have thus given to the charter in question, but
also in our conclusion that the plaintiff has alleged in his
declaration damage for which it required compensation, by
some recent cases which have come to our notice, since the
argument, and the cases referred to in them.   We refer par-
ticularly to *Parker* v. *The Boston and Maine Rail-road,* 3
*Cushing's R.* 107.   The *E. & W. India Docks and Birming-
ham Junction Railway* v. *Gattke,* 15 *Jur.* 261. (3 *Little &
Brown's Eng. Rep. in Law & Eq.* 59.) *and the London &
N. W. Railway Co.* v. *Bradley,* 15 *Jur.* 139. (5 *Litt. &
Brown's Eng. Rep.* 100.) which involved the construction of

*New-Haven*,
July, 1851.

Bradley
*v.*
New-York
and New-Ha-
R. R. Co.

legislative provisions, resembling that which we have been considering, requiring compensation to be made, by corporations similar to the defendants, to persons injured by the execution of their works.

We do not accede to the argument, that the defendants are protected from the suit of the plaintiff, on the ground that they have, by the authority claimed to be given to them in their charter, to raise the embankment in the highway opposite to the plaintiff's land, and their acquisition of the right to excavate and occupy the land of the adjacent owner for the rail-road, become clothed with the rights of the public in respect to repairing the highway crossed by the rail-road, and of the owner of such adjacent land, in respect to the use of his land ; and that, therefore, as between the plaintiff, on the one part, and the public and such adjacent owner, respectively, on the other, or the defendants representing them, the former has no ground of complaint.   If it be admitted, that the relative rights of the public and such adjoining owner, respectively, as between them and the plaintiffs, are such, that the one, having originally compensated the owner of the land covered by the highway for its use for that purpose, has a right to grade it as that purpose shall require, and that the other, by virtue of his ownership of the land, would have a right to excavate it, for any proper purpose, to the extent that the defendants have done, the bridge and the embankment connected with it were projected and raised, not by the public, but by the defendants, for their own necessities, and not for the convenience of the public, nor at their expense, nor on their behalf, although by their license, and for their accommodation, in compliance with the requirements of the defendants' charter ; and the defendants are not the owners, and have not the general rights of the owner, of the land excavated adjacent to the plaintiff's, but have only a special right to the use of it, for a particular purpose.   And we think, that by a fair construction of the charter of the defendants, these rights were conferred on them, only on condition that they should pay all damages occasioned to other persons, by their exercise. We perceive nothing in the charter, which should lead us to discriminate, in this respect, between the compensation for taking land, and other acts for which it is required.   As the

plea, therefore, does not allege, that any such compensation has been made to the plaintiff, for the damages of which he complains, we are of opinion that it is insufficient ; and that the superior court should be so advised.

*Middlesex,*
July, 1851.

Clark
*v.*
Saybrook.

The result to which we have come on this point, renders it unnecessary to consider the other questions made in the argument.

In this opinion the other Judges concurred.

Judgment for plaintiff.