HERMAN KIEFER, AUGUST F. DIEDERICH AND BERNARD
STROH v. THE GERMAN AMERICAN SEMINARY
OF THE CITY OF DETROIT.

*Governmental donation of lands for educational purposes.*

A grant of land was made by the State to an educational corporation,
and by the grant it was provided that the proceeds should be devoted
exclusively to the erection of buildings for the use of the corpora-
tion. A bond was given by individuals to the State to secure the
performance of this provision. By consolidation with another cor-
poration the donee secured all the buildings it needed, and after-
wards appropriated the proceeds of the lands to its general needs.
The sureties in the bond to the State then filed a bill to restrain the
misappropriation. *Held*, that the bill should not be sustained.

The design of the donation was to secure to the donee buildings for its
corporate use; and if the corporation secured all it needed, it would
be immaterial that they were secured by the donation of friends, or
by the use of moneys before in its possession, instead of using the
precise moneys received on sale of the lands. And it is equally
immaterial that the buildings were obtained without the use of any
moneys.

The State intended its donation to be beneficial; and it is not to be pre-
sumed that it would present to the donee under any circumstances
the alternative of expending the donation in useless buildings or for-
feiting it. The State had a particular benefit in view, and is inter-
ested only in seeing that that benefit is secured.

Appeal from Superior Court of Detroit. Submitted June
23. Decided October 12.

BILL for accounting for moneys received; for the appoint-
ment of a receiver, etc. Defendant appeals. Bill dis-
missed.

*Otto Kirchner* for complainant. Where the strict execu-
tion of a trust is possible, the *cy pres* doctrine is inapplicable:
Perry on Trusts § 733; Boyle's Law of Charities 150; or
where the trust requires that the fund shall be forever
applied as presented: *Atty. Gen. v. Ironmongers' Co.* 2 Myl.
& K. 576; a surety may, by bill in equity, compel a debtor

to pay his debt and *a fortiori* compel a trustee to execute his trust: *Hayes v. Ward* 4 Johns. Ch. 132; *Ranelaugh v. Hayes* 1 Vern. 189; *Barnesley v. Powel* 1 Ves. 283; *Flight v. Cook* 2 Ves. 619; *Champion v. Brown* 6 Johns. Ch. 398; *Lee v. Rook* Mosely 318.

*C. A. Kent* for defendant. Considerable latitude is allowed in the construction of charitable bequests. 2 Perry on Trusts § 723 *et seq.*

COOLEY, J. This is an equity case heard on pleadings and facts stipulated. The facts are as follows:

By an act approved March 15, 1861, the Legislature of the State granted to the defendant 25,000 acres of State swamp lands to aid the defendant in erecting buildings for its use. The lands were to be selected by defendant and conveyed to it, but the act contained a proviso " That if said seminary shall fail to erect buildings, in pursuance of the terms of the lease or grant made by the city of Detroit of land to said seminary, and within the time therein mentioned, said seminary shall in such event forfeit the swamp land, by this act granted, to the State of Michigan, and the same shall absolutely and forever revert to the State, against all and every person claiming to hold the same or any part thereof, and the patent or deed issued by the State of said lands shall state in substance this proviso of forfeiture." Laws 1861 p. 283. By an amendatory act passed in 1863 this proviso was changed so as to read as follows: " That before the issuing of the patents or conveyance, the trustees of said seminary shall deposit with the State treasurer a bond to the people of this State, with sufficient security, to be approved by the State treasurer, in the sum of twenty-five thousand dollars conditioned that the net proceeds of the sales of said lands shall be faithfully and forever applied to the purposes contemplated in this grant." Laws 1863 p. 59.

The bond provided for by this act was given by defendant, and complainants became the sureties therein. The lands granted were duly selected, patented to and the most of them sold by defendant, and the sum of $16,205.34 real-

ized therefrom.    In April, 1864, while defendant was without buildings for its use, it was consolidated with the German-English school of Detroit, and received therefrom a school building and lot of the value of ten thousand dollars, to which defendant three years later made additions at a cost of ten thousand dollars, and since that time has expended in repairs and improvements the sum of five thousand five hundred dollars.    Of the sums realized from the sale of swamp lands defendant has expended $2123.96 for buildings and repairs, $3726.53 for taxes, insurance and legal expenses, and $6954.85 for stationery, books, school utensils and teachers' salaries, and claims a right to expend any sum so received for the current expenses of its school.

The bill, to protect complainants against liability as sureties on the bond so given to the State, prays for an accounting by defendant of the moneys received from sales of said swamp lands, and that defendant may be enjoined from making use of any of such moneys for any purpose whatsoever except for the purpose of aiding the defendant to erect buildings for its use and occupancy.

It is admitted by the stipulation that the school buildings of defendant are now in a good state of repair, and as large as the wants of the school require.

On these facts the court of chancery granted decree in favor of complainants as prayed.

It is objected to this decree that, on the theory of the bill, the swamp lands were conveyed to the defendant in trust, and the bill seeks to compel the execution of the trust.   But the conveyance of the land to defendant was for its own benefit, so that if the conveyance was charged with a trust defendant was both *cestui que trust* and trustee, which is impossible. *Bolles v. State Trust Co.* 27 N. J. Eq. 308. In such a case, it is said, if the fund donated is not applied according to the directions of the donor, there can be no redress, for the donor, by making absolute conveyance to the beneficiary, has trusted wholly to his good faith and sense of duty.   See *Emigrant Co. v. Adams County* 100 U. S. 61, 69.

The bill, however, does not proceed on the theory of a trust. Its theory is that the donor in making a gift for a specific purpose has required the donee to give security against misappropriation, and the complainants, as the donee's sureties, are entitled to the protection of equity. There is an implied agreement between them and the defendant that the moneys shall be faithfully applied according to the intent of the gift, and a misappropriation would be a species of fraud. Nor is it any answer to say that the State, having conveyed absolutely, cannot possibly be damnified and therefore cannot in any event recover on its bond. The State, as donor, in releasing the condition of forfeiture contained in the act of 1861, had an interest amply sufficient to support the bond, and the bond was intended to accomplish the same purpose which the provision of forfeiture had in view. This was, to restore the property, or an equivalent, to the State in case of attempted misappropriation.

The vital question in the case, however, is whether any misappropriation, actual or threatened, is shown. The question must be solved on a consideration of the purpose of the grant, and the use which has been or is proposed to be made of the proceeds. The general purpose of the grant is made very plain by the statute. It was to aid a private educational institution to accomplish the object for which it was established. That object was to give instruction to those who should apply for it. To do this it must have buildings, means of illustration and teachers, and to obtain these it must have money. The State deemed it wise to provide that the moneys to be realized from its donations should be applied, not in the payment of teachers' wages, or for current expenses, but to the procuring of necessary buildings. If under any and every conceivable circumstances the application must be made according to the very terms of the grant, the agreed facts show that the corporation is already in default for some of them have been used otherwise.

The general rule undoubtedly is, that public grants are to be construed strictly as against the grantees. *United States v. Arredondo* 6 Pet. 691; *Charles River Bridge v. Warren*

*Bridge* 11 Pet. 544; *Martin v. Waddell* 16 Pet. 367; *Dubuque etc. R. R. Co. v. Litchfield* 23 How. 66; *Baltimore v. Railroad Co.* 21 Md. 50; *Bradley v. Railroad Co.* 21 Conn. 294; *Richmond v. Railroad Co.* 21 Grat. 614; *DeLancey v. Ins. Co.* 52 N. H. 581; *La Plaisance Bay Harbor Co. v. Monroe* Walk. Ch. 155; *Pennsylvania R. R. Co. v. Canal Com'rs* 21 Penn. St. 22. The grantee shall take nothing which is not plainly granted, and as is said in the case last cited, "every resolution which springs from doubt is against" him. But there is no question in this case in respect to the grant; its terms are clear and precise and its extent undisputed; the controversy arises upon the terms of a restraint imposed by the grant, and which is in the nature of a condition subsequent, and tends to a defeat of the grant by way of forfeiture. If the grant is to be construed strictly as against the grantees, the condition is to be construed strictly against the State; and the State is entitled to enforce it only when a forfeiture would be fairly within the intent of the act whereby the grant was made. The purpose of construction is to give effect to an instrument; not to defeat it: *Rice v. Railroad Co.* 1 Black 358; *People v. Burns* 5 Mich. 114; *Tabor v. Cook* 15 Mich. 322; and in a public grant especially, more than in any other, we should expect to find provisions looking to the permanent enjoyment of the right or property granted as against mere technical breaches of contract or condition on the part of the grantee, not tending to defeat the general purpose.

The general intent of the grant, as has been said, was to aid the incorporation in accomplishing its objects, but the funds realized must be expended in buildings. Buildings would be permanent and could not be wasted, and by requiring their construction, the State would guard as far as was practicable against its bounty being lost. But suppose the corporators when the lands were received had deemed it wise to withhold them from market for a term of years in anticipation of a rise in value consequent upon the improvement of the State, and by the donations of themselves and their friends, had procured all necessary buildings; would they

thereby have lost the benefit of the grant and entitled the State to demand a reconveyance? This, as we think, is in substance the question now before us.

A liberal and technical construction of the grant would require the very moneys realized from the lands to be applied to the purchase or erection of buildings. But the view consonant with the generosity which prompted the donation looks beyond the technicality, and finds the purpose substantially accomplished if the grant has enabled the donee to procure buildings for its purposes, whether exactly in the method contemplated or otherwise. If buildings were procured of a value equal to the fund donated, the condition of the grant would be kept in spirit, and it would be beneath the dignity of the State to raise technical objections and demand a forfeiture based upon a failure in literal compliance under such circumstances. Sovereignties do not deal with the objects of their bounty in that spirit.

In this case the grantee did not purchase or erect buildings, but it accomplished what was equivalent: it was enabled by consolidation with another organization formed for the same purpose to procure the buildings it needed. The value of these was equal to the grant, and it is conceded that they supply the corporate needs. The end, therefore, that was to be accomplished by the State grant, is now accomplished. Confessedly the defendant might still invest the State bounty in further buildings, but it has no need for them, and the fund would be wasted if made use of in that way. The State intended the fund should benefit the defendant, and we find nothing in the act which justifies us in saying that the State contemplated that under any circumstances the alternative would be presented to the defendant of either wasting the grant or restoring it. The restraint imposed by the grant was meant to prevent waste; not to invite or encourage it.

It may be said that if the money is not needed for buildings now, it is the duty of the defendant to keep it for that purpose until the time when it shall be needed. But if the statute had contemplated the erection of buildings at some

46 MICH.—41

indefinite time in the future after those first erected or obtained had gone to decay or been destroyed, it would have contained quite different provisions. It is entirely safe to say the State would not have accepted personal obligations as security for the application of the moneys at a distant and indefinite time when all the sureties would be likely to have passed away.

The conclusion is that the fears of the complainants are groundless, and their bill should be dismissed. We are inclined to think, however, there should be no costs awarded.

The other Justices concurred.