THE NEW HAVEN STEAM SAW MILL COMPANY, GEORGE B. MARTIN, RECEIVER, *vs.* THE CITY OF NEW HAVEN AND THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

JOHN S. CANNON, EXECUTOR, *vs.* THE CITY OF NEW HAVEN AND THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Third Judicial District, New Haven, June Term, 1899. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The elimination of a grade-crossing ordered by the railroad commissioners and by the Superior Court upon appeal, was finally effected by the defendants after a peremptory writ of mandamus had issued against them. *Held* that the improvement must be regarded as having been made pursuant to the order of the railroad commissioners, although not carried out within the time originally fixed nor in precise conformity to every detail of the prescribed plan.

Chapter 100 of the Public Acts of 1884 empowered the railroad commissioners to remove grade-crossings and to determine and direct by

whom, at whose expense and within what time the improvement should be made. Acting under this statute an order for the removal of a grade-crossing provided that the expense thereof, including incidental land damages, should be paid by the defendants. *Held:* —

1. That such damages sustained by an adjoining proprietor were not *damnum absque injuria,* as claimed by the defendants, but became a statutory obligation payable by them in the proportion fixed by the commissioners.

2. That the landowner was entitled to an allowance in the nature of interest on the amount of his damage, from the time that was definitely ascertained—in this case the date when the committee's report was filed—to the date of final judgment. (*Two judges dissenting.*)

Argued June 14th—decided October 5th, 1899.

APPEALS from an assessment of benefits and damages resulting from a change of grade in a highway of the defendant city, taken to the Superior Court in New Haven County and referred to a committee by whom the facts were found and reported; the court, *Robinson, J.,* overruled *pro forma* remonstrances filed by the defendants against the acceptance of the report, and reserved all questions of law arising upon the record for the consideration and advice of this court. *Judgment advised for the plaintiff in each case.*

These two cases depend on the same facts. The first-named plaintiff is the owner of a tract of land on the south side of Chapel street and east of East street, and which extends easterly more than 800 feet from said East street. The second-named plaintiff is the executor and trustee under the last will of William P. Dickerman, late of New Haven, and as such executor and trustee he is the owner of a tract of land in said city of New Haven on the north side of said Chapel street and easterly of East street, and extending more than 800 feet from said East street. The "freight branch" of the New York, New Haven and Hartford Railroad Company is laid across said Chapel street and across the lands of each of the plaintiffs.

The facts appearing in the record of these cases, somewhat condensed and stated historically, are these : On the 6th day of June, 1886, the railroad commissioners issued their order of notice, in which they stated that "it having been repre-

sented to us that public safety requires an alteration of the highway in the city of New Haven known as Chapel street, now crossed at grade by the 'freight branch' track of the New York, New Haven & Hartford Railroad Company, and that the same shall be so changed as to be carried over the track;" and then followed their order of notice to all persons in interest and to all the parties in these suits, that they appear and be heard on said matters on the 17th day of June then next. And the commissioners thereupon, on said last-named day, made their finding that said order of notice was served and that on said day all the parties appeared and were fully heard; and made their order in the premises as follows: "And now after such hearing we do deem best and determine that said highway or Chapel street so-called, be so altered as to cross over said railroad by a bridge instead of crossing at grade, as at present; the height of said bridge above the rails to be not less than 15 feet in the clear; and in order that the grade of the approaches may be as light as possible we do direct that the tracks at said crossing be lowered twenty (20) inches. The work of lowering said tracks to be done by the said railway company, and all the other work incident to said alterations, including the building, making, and construction of the bridge, abutments, enbankments and approaches, to be done and performed by said city, in general accordance with the plan on file in this office marked 'Proposed Bridge at Chapel street over the N. Y., N. H. & H. R. R., New Haven, Ct., June 17th, 1886, Albert B. Hill, City Engineer.' All of said alterations to be made and completed within one year from the date of this order, and including the land damages if any incident to said alterations to be at the joint expense of said city and railroad company, each in the first instance to pay the cost of the alterations ordered to be made by it, and the land damages, as they may be assessed. And on the completion of said alterations and the payment of said costs and land damages, if it shall appear that the amount paid by the city is in excess of that paid by the railroad company, then said company to pay

New Haven Steam Saw Mill Co. *v.* New Haven et al.

said city one half of said excess; but if it shall appear that the amount paid by said company is in excess of that paid by said city, then said city to pay said company one half of said excess."

There was an appeal from said order of the railroad commissioners taken to the Superior Court; and the said court, on the 18th day of November, 1887, rendered its judgment upon the matters appearing in said appeal, to wit: "This court having re-examined the question of the propriety and expediency of the order appealed from, finds that public safety requires the alteration of the said highway, and that said alteration is a matter of public convenience and necessity. Whereupon it is adjudged that said order of the railroad commissioners be and hereby is modified, so that said order when modified shall read as follows, and the same is made an order of this court." The order so made was word for word the order made by the railroad commissioners, except that the time was two years instead of one year within which the work was to be done and completed.

Neither the city of New Haven nor the said railroad company performed or took any measures towards the performance of the said order within one year or within two years, nor within any reasonable time thereafter.

On the 6th day of November, 1896, the Superior Court in and for the county of New Haven, upon the complaint of William H. Williams, Esq., attorney for the State in said county, issued a peremptory writ of mandamus to the said city and the said railroad company, requiring and enjoining them to comply with the said order of the railroad commissioners so affirmed by the said Superior Court. The mandatory part of said writ is in these words:—

"Therefore, that due and speedy justice may be done in this behalf, it is hereby required and enjoined of you, the said city of New Haven, and of you, the said New York, New Haven and Hartford Railroad Company, that you and each of you do forthwith comply with and carry out the directions and provisions of said modified and confirmed order, and erect and construct said bridge, abutments, enbankments,

and approaches thereto, and pay all the expenses thereof, including land damages, if any, in the manner and according to the terms and conditions of said modified and confirmed order of the railroad commissioners, and that you and each of you obey and conform in all respects to said order."

This peremptory order was served on both these defendants on the 7th day of November, 1896. As soon as was practicable after the service of that writ the city began preparations for doing the work therein commanded; making plans, engaging contractors and workmen. On the 12th day of December, 1896, it was ordered by the common council "that the board of public works take immediate measures for the construction of the Chapel street bridge, in conformity to the mandamus of the Superior Court as promulgated;" and from time to time other orders respecting the same matter were passed. On the 12th day of May, 1897, the board of public works, having been ordered to cause a survey of Chapel street to be made, reported such a survey showing the grade and line in Chapel street in conformity with the plans for said new bridge, which plans were adopted; and on the same day the bureau of compensation was ordered to assess the benefits and damages to the owners of all property affected by the change of grade between East street and a point 800 feet east of East street on Chapel street, and by the construction of the bridge over the railroad tracks, and the retaining walls, in accordance with the plans adopted and on file in the office of the city engineer. On the 2d day of May, 1898, the bureau of compensation reported that they had attended to said duty, had given notice to all such persons to appear and be heard, that all persons had been fully heard, and that they had assessed (to each of the plaintiffs herein) the damages and benefits as equal. This report was accepted by the common council. From this action by the city the present complaints or appeals were taken.

The complaints in the two cases are in substance the same. Each, after describing the land belonging to the plaintiff therein, contains averments in these words: "Said city of New Haven has changed the grade of said Chapel street in

front of said land and property of your applicants, and raised the same about sixteen (16) feet in height at the highest point, and has constructed a bridge over said railroad track of said New York, New Haven and Hartford Railroad Company, and built retaining walls, erected masonry and earthwork, occupying the whole of said Chapel street in front of your applicants' property, and wholly obstructed and prevented access to said Chapel street from your applicants' said property. The bureau of compensation of said city of New Haven assessed and determined that the damages and benefits accruing to your applicants by reason of said change in grade between said East street and a point eight hundred (800) feet east of East street on said Chapel street, and of the construction of said bridge over said railroad tracks, and said retaining walls, were equal, and said bureau duly made its report of the same. Afterwards the court of common council of said city . . . accepted said report, passed the order, and laid said assessments, . . . and on the 6th day of October, 1898, the mayor of said city duly approved of said action of said court of common council. The damages to accrue to the applicants by reason of the change of grade between East street and a point eight hundred feet east of East street on said Chapel street in front of the property of your applicants, and of the construction of said bridge over said railroad tracks, and said retaining walls, are greatly in excess of any benefits that may accrue to them by reason of the same, and said property of your applicants has been specially damaged thereby. Your applicants are aggrieved by said order of said court of common council in accepting said report . . . and in laying said assessment as aforesaid, and in determining that the damages and benefits accruing to your applicants are equal."

The applicants prayed the court itself to assess and determine the amount of damages and special damages to their property by reason of said change of grade, etc.

The answer by each defendant was the same, and was in two defenses. The first admitted most of the complaint. It denied that the whole of Chapel street was taken, denied

that the damages were greater than the benefits, and that the property of the plaintiffs had been specially damaged.

The second defense was this : " 1. The change of grade, construction of bridge and building of retaining walls, described in the application for relief, were all made and done under and in pursuance of a certain order of the railroad commissioners of the State of Connecticut, dated June 17th, 1886, a copy of which is hereto annexed, marked Exhibit A, and a judgment of the Superior Court, dated November 18th, 1887, affirming said order, of which a copy is hereto annexed, marked Exhibit B.    [These are the order of the railroad commissioners and the judgment of the Superior Court above set out.]    2. The assessment whereby the applicant claims to be aggrieved was made by the court of common council of the city of New Haven, for the purpose of ascertaining the amount of benefits and land damages, if any, which might be due from or to any party by reason of the construction of said bridge and approaches, pursuant to said order and judgment."

The replication was in each case a denial of the second defense.

Both these cases were referred to the same committee, who heard them together, and made reports finding the issues in each case for the plaintiffs, and setting forth all the facts which appeared on the trial.    These reports differ only so far as it is made necessary by the fact that one of the plaintiffs asked damages for land on the north side of Chapel street, and the other plaintiff for damages to land on the south side of the same street.    Each of the defendants remonstrated against the report in each case, and there was a reply to these by the plaintiffs.    The cases were thereupon reserved for the consideration and advice of this court.

*Henry Stoddard* and *John W. Bristol,* for the plaintiffs.

*George D. Watrous,* for the defendant, the New York, N. H. & H. R. Co.

*William H. Ely,* for the defendant, the city of New Haven.

ANDREWS, C. J. The record in these cases shows that the city of New Haven changed the grade of Chapel street, a much frequented highway in that city. The report of the committee finds that each of the plaintiffs was damaged by that change of the grade of said street to a very substantial amount; and each of the plaintiffs seeks to recover his own damage. The defendants say that whatever they or either of them did in or about the changing of the grade in the said street, they did pursuant to and by reason of the order made by the railroad commissioners of the State, modified, approved and affirmed by the Superior Court, directing them to make such change of grade, and coerced thereto by a writ of peremptory mandamus lawfully issued and duly served upon them; that in whatever they did in the matter they acted in obedience to the command of the sovereign power of the State in the performance of a police duty, and that they are not liable to the plaintiffs for any damages which the plaintiffs may have suffered by reason of their performance of the duty so commanded. The plaintiffs, in reply to this claim of the defendants, say: first, that the defendants did not act in pursuance to the order of the railroad commissioners, but proceeded of their own motion, and therefore are liable for the damages they have caused; and second, that even if they did act pursuant to the order of the commissioners, they are equally liable for the damages,—made so by the laws of the State.

It is upon the correctness of these claims that the right of the plaintiffs to recover, depends. Moreover, these claims embrace the substance of all the questions made by the remonstrance to the committee's report.

In that series of events which resulted in the change of the grade in Chapel street, the initial step was the proceeding by the railroad commissioners. To that proceeding all persons supposed to be interested were made parties by the notice given by the commissioners. From that proceeding issued the order that the change in the grade of Chapel street should be made, directing the city and the railroad company to do the work and apportioning the payments to be made. Then followed the judgment of the Superior Court, and later the

peremptory mandamus. Both these last-named proceedings were based upon the order made by the commissioners, and commanded the performance by the defendants of the work therein ordered by the commissioners to be done. In the light of these successive orders, decrees and commands, it is impossible to come to any other conclusion than that "the change of grade, construction of bridge, and building of retaining walls, described in the complaint, were all made and done under and in pursuance of the said order of the railroad commissioners." That the work was not done within two years after the order was made, and that the bridge is a trifle wider than the layout of the street, were immaterial variances which should have been disregarded.

The order here in question was one designed to remove a dangerous grade-crossing in Chapel street in the city of New Haven. Every grade-crossing is a menace to human life. The legislature, in enacting those statutes which empower the railroad commissioners to order the removal of such crossings, and the commissioners in making such orders, are exercising the police powers of the State for the preservation of life. The extinction of grade-crossings, when ordered by the legislature, is within the police powers of the State. *Westbrook's Appeal*, 57 Conn. 95, 104. An order made pursuant to such legislation is an exercise of the police powers. The defendants say that because they acted pursuant to an order of the State in the exercise of its police powers to abate a nuisance, they are not liable in damages to the plaintiffs for any injury that, in consequence of their act, may have been done to the plaintiffs' property. They say that if property is injured or destroyed by the State, or the agents of the State, in the lawful execution of a police regulation, the owner cannot recover for such damage; that it is *damnum absque injuria*. As a general statement we suppose this to be correct. It is very likely that there is no common-law liability upon the defendants to pay damages to the plaintiffs.

But the legislature may and often does authorize or even direct acts to be done which are harmful to individuals, which, without such authority, would render the persons doing the

acts liable to pay damages. If, however, in such cases the statute authorizing or directing the act to be done is one which the legislature has the power to pass, the acts are lawful, and the party doing them is not liable in damages unless the power has been exceeded. But in such statutes there may also be given to those who suffer consequential damages the right to recover therefor; and when so given, the right to recover compensation is a creature of statute; and the injured person may recover accordingly. *Transportation Co.* v. *Chicago,* 99 U. S. 635, 640; *Rowe* v. *Granite Bridge Co.,* 21 Pick. 344; *Darlington* v. *Mayor,* 31 N. Y. 164; *Allegheny Co.* v. *Gibson,* 90 Pa. St. 397. The legislature, having the power to order the act to be done, may provide compensation for the property injured by the doing of the act, in such mode and to such extent as it deems wise. Instances of such legislation are very numerous. The Acts of 1875 and 1880 authorizing the board of agriculture or its commissioners to cause animals supposed to be infected by some contagious disease to be killed, and providing compensation to the owner of such animals, are statutes of this kind. See also General Statutes, Rev. of 1875, pp. 18 and 19; Public Acts of 1880, Chap. 73; id. 1885, Chap. 106; id. 1887, Chap. 70. And in all cases where compensation is so provided, the party doing the act which causes the damages must have the damages ascertained and pay them; otherwise the party injured may bring an action therefor. *Holley* v. *Torrington,* 63 Conn. 426; *Cullen* v. *New York, N. H. & H. R. Co.,* 66 id. 211, 226.

Chapter 100 of the Public Acts of 1884 is also a statute of the same kind. It is as follows: " The railroad commissioners may, when in their opinion public safety requires an alteration of any highway crossed at grade by a railroad, after a hearing had upon such notice as they shall deem reasonable to the railroad company owning or operating said railroad, and to the selectmen of the town, mayor of the city, or warden of the borough within which said highway is situated, and to the owners of the land adjoining said crossing, order such alterations in such highway as they shall deem best, and shall determine and direct by whom such alterations shall be

made, at whose expense, and within what time." This Act was an amendment of a similar Act passed the previous year. See Public Acts of 1883, Chap. 107, § 3. And the latter statute was an extension of an Act passed in 1876, Chap. 36. See also the General Statutes of 1875, p. 232.

This was the statute in force when the order made by the railroad commissioners in this case went into effect. Acting upon the authority so given them, and, as appears from their recital, upon their own opinion that the public safety required it, the railroad commissioners made the order in the present case. They ordered the grade-crossing in Chapel street to be changed, and that in the changing of such crossing the street be raised sixteen feet for some distance in front of the land of the plaintiffs. They also ordered that all of the said alterations should be made and completed within two years from the date of the order, and that the expense thereof, "including the land damages if any incident to said alterations," should be at the "joint expense of the said city and railroad company." A part of the land damages "incident to said alterations" was the damage done to the present plaintiffs by raising the grade of the highway to which their lands were adjacent. This was a damage which the city was by law bound to pay to them. General Statutes, Rev. of 1875, p. 236; Public Acts of 1882, Chap. 73. The order of the railroad commissioners provides for the payment of these damages, and at whose expense. The defendants are therefore under a statutory liability to pay to the plaintiffs their damages; the amount to be apportioned between the defendants as is specified in the order of the railroad commissioners.

The city of New Haven, recognizing its liability under the said order of the railroad commissioners, after the work was completed directed the bureau of compensation to assess to all parties interested the benefits and the damages to accrue by the change of grade in Chapel street. That board acted in the premises and made its report, finding the damages and benefits to each of the plaintiffs to be equal. The present complaints are each an appeal from that assessment. The committee of the Superior Court has found that the damages

to the plaintiffs largely exceed the benefits to them.    We think the defendants are by the statute made liable to pay the amount of the damages so ascertained.

The Superior Court is advised to accept the reports of its committee and to render judgment in favor of the New Haven Steam Saw Mill Company for the sum of $22,762.84, and in favor of John S. Cannon, executor, for the sum of $12,444.95.

The costs in this court will be taxed in favor of the respective plaintiffs.

In this opinion the other judges concurred.


AT the opening of the next term of the court held in the judicial district (October, 1899), counsel for the plaintiffs appeared and asked leave to file a motion that argument might be ordered on the question whether interest could be added to the sums for which judgment had been advised, unless the court by its rescript intended to determine against the allowance of interest, and, in that case, that the Superior Court be advised more definitely as to that point.    After hearing counsel for the defendants, leave was granted, and such a motion was filed and subsequently argued.

*Henry Stoddard* and *John W. Bristol*, for the plaintiffs.

*George D. Watrous* and *A. Heaton Robertson*, for the defendants.

PER CURIAM.    The question whether interest should be allowed, in addition to the principal sums reported by the committee, was not made the subject of argument by counsel nor consideration by the court, when the cause was heard at the June term.    The terms of the rescript which were sent down are such as to exclude its allowance.    Upon consideration of the present motion, we are of opinion that no allowance should be made in the nature of interest from any date prior to that of the filing of the committee's report.

New Haven Steam Saw Mill Co. v. New Haven.

At that date, however, the damage which the plaintiffs have suffered was definitely ascertained. The delays which have followed are not attributable to their fault. To give them just compensation for the injury which has been occasioned to them for the public good, it is necessary to make them an allowance in the nature of interest from the period when their damages were liquidated to that when they are put into formal judgment.

It is therefore ordered that in recording the judgments of this court in said causes, the advice given be entered as advice to render judgment in favor of the New Haven Steam Saw Mill Company for the sum of $22,762.84, and in favor of John S. Cannon, executor, for the sum of $12,444.95, with legal interest on said respective amounts from the date of the filing of the committee's report, and costs; and that the costs of this court be also taxed in favor of the respective plaintiffs.

From this opinion ANDREWS, C. J., and HAMERSLEY, J., dissented.

HAMERSLEY, J. The statutory liability for damages caused by change of grade involves no liability for interest, until the amount of the damage is determined according to law. Nonpayment by the parties responsible for the damage, before that time, is not a breach of duty for which interest can be allowed.

In this opinion ANDREWS, C. J., concurred.