PHILIP W. OPPENHEIMER ET AL. *v.* THE CONNECTICUT LIGHT AND POWER COMPANY

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued October 4—decided November 28, 1961

*Robert B. Seidman,* with whom was *Sidney Vogel,* for the appellants (plaintiffs).

*Walter F. Torrance, Jr.,* for the appellee (defendant).

ALCORN, J. The plaintiffs applied to a judge of the Superior Court for the appointment of appraisers under § 16-236 of the General Statutes. A demurrer to the application was sustained and, the plaintiffs failing to plead over, judgment was rendered for the defendant, from which the plaintiffs appealed.

The application of the plaintiffs recited in substance that they are owners of real property in Norwalk, that the defendant is an electric power company, that the public utilities commission granted

the defendant permission under § 16-235 of the General Statutes to locate a steam generating plant in a residential zone very near the plaintiffs' property, and that the plaintiffs thereby suffered damage. The grounds of demurrer were: (1) If the plaintiffs have suffered a loss, it is not one for which damages are due them from the defendant; (2) no taking of the plaintiffs' property was alleged; (3) it was not stated that the defendant's steam generating plant is to be located on any highway or public ground adjoining the plaintiffs' property; and (4) it was not alleged that the plaintiffs' property adjoins the property on which the defendant received permission to locate the plant. The judge sustained the demurrer on the ground that § 16-236 provides only for the "appraisal of damages to property taken under the power of eminent domain" and therefore the allegations of the plaintiffs' application were insufficient, since they did not show the taking of any property belonging to the plaintiffs, or of any interest therein.

The proceedings surrounding the granting of permission to locate the steam generating plant were reviewed and approved by us in *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 103 A.2d 535, and *Wilson Point Property Owners Assn.* v. *Connecticut Light & Power Co.*, 145 Conn. 243, 140 A.2d 874. The statute under which the permission was granted is now § 16-235. It is fully discussed in the *Jennings* case. Section 16-236, under which the present application was brought, provides, so far as is pertinent: "Any judge of the superior court may, upon the application of any party interested, . . . appoint three disinterested persons to make a written appraisal of all damages due any person by reason of anything done under

any provision of section . . . 16-235. Such appraisal, when approved by such judge, shall be returned to and recorded by the clerk of the superior court for the county where the cause of action arose, and thereupon the sum specified therein shall be paid immediately by the company to the party entitled to the same . . . ."

The plaintiffs' application is to be tested on demurrer, as any complaint would be, by the facts provable under its allegations. *Benson* v. *Housing Authority,* 145 Conn. 196, 199, 140 A.2d 320; *Rutt* v. *Roche,* 138 Conn. 605, 608, 87 A.2d 805. If any facts which are provable under the allegations of the application would support the cause of action relied on, the demurrer must fail. *Blakeslee* v. *Board of Water Commissioners,* 106 Conn. 642, 649, 139 A. 106. "The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them." *Benson* v. *Housing Authority,* supra. In the determination of the sufficiency of the application, the intent of § 16-236 becomes significant. For this intent we look to the wording of the statute and to its history and basic policy as they may be disclosed by pre-existing legislation and the circumstances which brought about the enactment of the statute. *Jennings* v. *Connecticut Light & Power Co.,* supra, 658.

From the outset, the predecessors of § 16-236 have formed a part of the legislation dealing with the regulation and control of public service corporations enacted to meet the advent of telegraph, telephone and electric power companies. In its inception, the section afforded relief by way of damages to landowners over whose lands telegraph lines passed or on whose lands incidental posts, piers or abutments were placed. The damages to

be awarded were for loss sustained "by reason of said lines, posts, piers or abutments." Public Acts 1848, c. 84, § 6; as amended, Statutes, 1849, p. 180. This relief was clearly based on rights in the field of eminent domain.

In 1860, additional regulatory measures affecting telegraph companies were passed (Public Acts 1860, c. 66, § 1) and the Superior Court was empowered, on the application of the owner of a telegraph line "or of any party aggrieved," to appoint appraisers to assess "all damages which may be due to any person or persons, by reason of anything which may have been done under authority of the first section of this act." Id., c. 66, § 2. Substantially the same provision was contained in the Revision of 1866, page 210, § 567. In 1875, further controls over telegraph companies were provided for, and "[a]ny judge of the Superior Court" was, "upon the application of any party interested," empowered to appoint appraisers to assess "all damages which may be due to any person by reason of any thing which may have been done by authority of" the regulatory sections. Rev. 1875, p. 341, § 5. In the Revision of 1888, the language, in substance, remained the same except that damages were to be awarded by reason of anything which may have been "done under" the regulatory sections. Rev. 1888, § 3948. This language continued substantially unchanged in the legislation affecting utility companies as it was amended to the present. Rev. 1902, § 3907; Rev. 1918, § 3892; Rev. 1930, § 3824; Rev. 1949, § 5647; Rev. 1958, § 16-236.

In this history of § 16-236, it is significant that while the 1848 act granted relief only to "any person over whose lands . . . lines shall pass," the 1860 act gave relief to "any party aggrieved," and

the statutes from 1875 on have afforded relief to "any party interested." It is also significant that the 1848 act provided for damages for loss sustained "by reason of . . . lines, posts, piers or abutments," but the statutes of 1860 and 1866 allowed damages for anything "done under authority of" the regulatory sections, and the 1875 statute permitted an award for anything "done by authority of" the regulatory sections. In the Revision of 1888, we first encounter the provision for damages for anything "done under" the regulatory sections. This provision has continued uniformly to the present. "Unless it clearly appears otherwise, revisers are presumed to have expressed in their revision the intent of existing statutes, though they may have altered the form of their statement." *Wilson* v. *Miller,* 144 Conn. 212, 216, 128 A.2d 894. This history of the development of § 16-236 indicates a legislative intent to depart from strict eminent domain principles as a basis for damages and to provide for the payment, to any party interested, of damages for anything done under or by authority of § 16-235. Section 16-236 is to be construed to carry out this intent, even though its language might, on its face, appear to authorize an award of damages arising from the mere grant of permission by a public authority under § 16-235. See *Wilson* v. *Miller,* supra, 214.

The defendant concedes the power of the General Assembly to condition the grant of rights to a utility company on the payment of consequential damages arising from the company's actions under the rights granted. See *New Haven Steam Saw Mill Co.* v. *New Haven,* 72 Conn. 276, 285, 44 A. 229. The plaintiffs assert that, on analogy to *Bradley* v. *New York & N.H.R. Co.,* 21 Conn. 294, damages re-

coverable under the terms of the defendant's charter may be recovered under § 16-236. The charter involved in the *Bradley* case, supra, 308, required the railroad "to pay all damages that may arise to any person or persons" from the exercise by it of enumerated rights granted to it by the legislature. 4 Spec. Laws 1022, § 7. We held (p. 310) that the charter entitled the plaintiff to recover incidental or consequential damages arising from the acts of the railroad. The charter of the defendant in the present case contains a like provision. 18 Spec. Laws 107, § 3; 14 Spec. Laws 862, § 6; 17 Spec. Laws 833, No. 136.

Because, however, of the nature of the plaintiffs' allegations, the question of the type of damages they would, under proper allegations, be entitled to is not before us. Whether the damage which may be proved is so-called direct damage or damage of a type sometimes called consequential is not now pertinent. The essential requirement is that it be damage arising from some act of the utility company. Damage of that nature is not alleged in the plaintiffs' application. It is not alleged that the company has done anything pursuant to the authority given it. From this, it follows that damage arising from any action of the company cannot be proved. This deficiency is successfully attacked by the first ground of demurrer. Consequently, the result reached by the court was correct. It is immaterial that the ruling of the court was based on a different ground. *Turrill* v. *Erskine,* 134 Conn. 16, 20, 54 A.2d 494; *Perkins* v. *Coffin,* 84 Conn. 275, 282, 79 A. 1070.

There is no error.

In this opinion the other judges concurred.