## Charles A. Edwards *v.* Bridgeport Hydraulic Company

King, C. J., Murphy, Alcorn, Shannon and House, Js.

Argued June 2—decided June 22, 1965

*Raymond W. Beckwith,* for the appellant (defendant).

*Frederick F. Ehrsam,* for the appellee (plaintiff).

KING, C. J.  The plaintiff for many years had owned and occupied an extensive estate of eighty acres in the Tashua area of Trumbull.  In addition to a large dwelling there were various outbuildings, a sunken garden, a swimming pool and other improvements.

The defendant is a privately owned public service company supplying water to customers in a number of towns in the Bridgeport area, including the town of Trumbull.

In 1957, the defendant purchased a tract of land of seven acres adjoining the plaintiff's land.  The seven-acre tract included the highest point of land in Trumbull.  Both tracts of land are in an AA residential zone, and the neighborhood is free from any nonconforming uses.  The plaintiff was in nowise connected with the corporation from which the defendant purchased its tract, had never owned any interest in that land and was not in any way involved in its sale to the defendant.

The defendant's purpose in purchasing the seven-acre tract was to erect thereon a large circular water tank, thirty-five feet in height above the

ground, with a diameter of 120 feet and having a storage capacity of 3,000,000 gallons. This tank was to become an integral part of the defendant's water distribution system for use in assuring an adequate supply of water to the defendant's customers.

Under General Statutes § 16-235, the defendant could not erect the water tank without a permit from the planning and zoning commission of Trumbull, except that on appeal the public utilities commission could overrule the local commission's action. *Dwyer* v. *Public Utilities Commission,* 147 Conn. 229, 231, 158 A.2d 742. On April 10, 1959, application for a permit was made to the local commission, which, on April 24, granted it.

Joseph Sciortino, a neighboring property owner, pursuant to § 16-235, appealed to the public utilities commission from the action of the planning and zoning commission in granting the permit, and on August 25, 1959, the public utilities commission denied the Sciortino appeal.[1] The plaintiff was not a party to, nor did he participate in, the proceedings before the planning and zoning commission or those before the public utilities commission, and he did not institute any proceedings before either commission on his own account.

On or before November 3, 1959, the defendant obtained a building permit from the town of Trumbull for the erection of the water tank. Construction was completed and the tank was put into actual

---

[1] The procedure followed by the defendant in making the required application for the permit to the planning and zoning commission, as well as that followed by Sciortino in appealing to the public utilities commission from the granting of the permit, is outlined in *Dwyer* v. *Public Utilities Commission,* 147 Conn. 229, 231, 158 A.2d 742. On page 231 of that opinion, the material portion of § 16-235 is quoted in a footnote, and earlier cases construing and applying the statute are cited.

operation as an integral part of the defendant's water distribution system on January 29, 1960. The tank was painted, and evergreens were planted around its base.

On February 10, 1961, process was served on the defendant in an application made by the plaintiff to a judge of the Superior Court, under § 16-236 of the General Statutes, claiming the appointment of appraisers to assess consequential damages against the defendant, alleged to have been sustained by the plaintiff in the depreciation of his property as a result of the acts done by the defendant under § 16-235. The defendant contends that the plaintiff, as matter of law, is not entitled, under § 16-236, to recover consequential damages of the type claimed here. The judge of the Superior Court to whom the application was made, after a hearing, decided adversely to this claim and entered an order appointing appraisers to determine such consequential damages of the type alleged as the plaintiff could prove. From this decision the defendant took this appeal.

Unless as matter of law the plaintiff could not be awarded such consequential damages, the procedure followed by the judge was correct, and his decision appointing the appraisers was a final judgment, which is properly subject to appeal to this court. *State* v. *Fahey*, 147 Conn. 13, 17, 156 A.2d 463; s.c., 146 Conn. 55, 58, 147 A.2d 476.

Section 16-236, under which the plaintiff is proceeding, insofar as material, provides as follows: "Any judge of the superior court may, upon the application of any party interested, and after notice, unless the application has been unreasonably delayed, appoint three disinterested persons to make a written appraisal of all damages due any person

by reason of anything done under any provision of section . . . 16-235. Such appraisal, when approved by such judge, shall be returned to and recorded by the clerk of the superior court for the county where the cause of action arose, and thereupon the sum specified therein shall be paid immediately by the [public service] company to the party entitled to the same".

The defendant in various ways makes the basic claim that the statute permits damages only to the extent required by § 11 of article first of the Connecticut constitution. It is true, as the defendant claims, that the prohibition in our constitution against the taking of property for public use without just compensation does not apply where the injury is only consequential and there has been no physical taking of land or any interest in it and no physical invasion of it. *Benson* v. *Housing Authority,* 145 Conn. 196, 200, 140 A.2d 320; *Anselmo* v. *Cox,* 135 Conn. 78, 83, 60 A.2d 767, cert. denied, 335 U.S. 859, 69 S. Ct. 132, 93 L. Ed. 405.

No condemnation is involved in the instant case. Section 16-235 is not a condemnation statute. See *Oppenheimer* v. *Connecticut Light & Power Co.,* 149 Conn. 99, 104, 176 A.2d 63; *Mitchell* v. *Southern New England Telephone Co.,* 92 Conn. 633, 635, 103 A. 754. The statute merely establishes a method of controlling the erection, by public service companies, of water tanks and other enumerated structures. *Dwyer* v. *Public Utilities Commission,* 147 Conn. 229, 231, 158 A.2d 742. Furthermore, the language of § 16-236 is broad. Its wording places no restriction on the type of damages to be awarded. It permits recovery of "all damages due any person by reason of anything done under any provision of section . . . 16-235." The defendant applied under

§ 16-235 for the permit to erect the tank. When the permit finally had been obtained, and not before, the defendant was authorized to, and did, erect the tank. The erection of the tank was something "done under . . . [a] provision of section . . . 16-235." It follows that the plaintiff was entitled to an opportunity to prove his claim of consequential damages for the depreciation of his property resulting from the erection of the tank.

There is no claim that the General Assembly could not constitutionally provide, as it clearly did in § 16-236, for the recovery of such consequential damages insofar as the plaintiff could prove them. *Oppenheimer* v. *Connecticut Light & Power Co.*, supra; *Mitchell* v. *Southern New England Telephone Co.*, supra; *New Haven Steam Saw Mill Co.* v. *New Haven*, 72 Conn. 276, 284, 44 A. 229.

As a secondary claim, the defendant contends that the plaintiff can recover only damages peculiar to his land and not damages suffered by landowners in general or in the vicinage. In support of this claim, also, the defendant relies on *Benson* v. *Housing Authority*, supra, 202. The short answer is that no such issue is involved in this appeal. There is nothing to show that any depreciation claimed would be similarly sustained by all land in the vicinity.

The defendant also claims that the application to the planning and zoning commission for the permit to erect the water tank, the subsequent issuance of the permit by that commission, and, on appeal, the affirmance by the public utilities commission of the granting of the permit, do not, separately or in combination, constitute "anything done under any provision of section . . . 16-235." This claim merits no extensive discussion. An examination of the defendant's brief on this point discloses that in the main

it is a reiteration of the basic claim, already rejected, that the phrase "anything done" under § 16-235 comprehends only a physical invasion of the plaintiff's property. Of course, as already pointed out, the defendant could not, under § 16-235, erect the tank without the permit. Obviously, the erection of the tank was something "done under . . . section . . . 16-235."

The defendant's third basic claim is that the plaintiff failed to exhaust his administrative remedies, which the defendant claims consisted of an appeal to the public utilities commission from the action of the planning and zoning commission in granting the permit. This claim also is without merit. Section 16-236 makes no mention of such an appeal but refers to damages for "anything done" by the defendant under § 16-235. If the General Assembly had so intended, it could easily have limited the right to damages to one who had unsuccessfully appealed to the public utilities commission from the granting of a permit. It is obvious that the restriction to "anything done" embraces just such a situation as existed here.

This conclusion is fortified by the terms of § 16-235 as construed by this court. If the location of the water tank was reasonable and the tank was actually required for the efficient operation of the defendant's distributing system, the plaintiff would be unlikely to succeed in such an appeal. We have here no mere zoning problem as our cases amply demonstrate. *Dwyer* v. *Public Utilities Commission*, 147 Conn. 229, 231, 158 A.2d 742, and cases cited therein. It is clear that one effect of § 16-235 is to put the public service company in a special position by making the proper functioning of the company's system an important consideration in the granting of a per-

mit. *Dwyer* v. *Public Utilities Commission,* supra. But if the company chooses to take advantage of that position and obtains and acts upon the permit by erecting a water tank, it does so at the risk of having to pay any damages sustained as provided in § 16-236. The plaintiff was under no duty to attempt to block the defendant's endeavors to erect a water tank, which the defendant claimed was highly desirable, if not actually essential, to the proper functioning of its distribution system. If, as proved to be the case, the permit for the erection of the tank was granted, and the tank erected, the plaintiff, under § 16-236, was entitled to recover his consequential damages, as claimed, insofar as he could prove them.

The final claim of the defendant is that the plaintiff's application for the appointment of appraisers under § 16-236 was "unreasonably delayed." This claim was an affirmative defense, as would be an ordinary plea of the Statute of Limitations, and was so recognized by the defendant in raising it in a special defense. *Rosenblatt* v. *Berman,* 143 Conn. 31, 39, 119 A.2d 118. Whether the plaintiff's application was "unreasonably delayed" was an issue of fact, dependent upon the surrounding circumstances. Any consequential damage in the depreciation of the plaintiff's property was difficult, if not impossible, to determine until the tank had been erected and the painting and planting completed. This was not accomplished until at least January 29, 1960. Had the application been an ordinary tort action in nuisance, which would probably be most nearly analogous to the statutory action authorized by § 16-236, the applicable Statute of Limitations would have been "three years from the date of the act or omission complained of." General Statutes § 52-577. For

the reasons already pointed out, the defendant, in invoking § 16-235 in order to be able to erect the water tank, necessarily was charged with knowledge that it might have to respond in damages under § 16-236. Of its own free will it chose to erect the tank. There is nothing to show any prejudice resulting to the defendant from the plaintiff's failure to institute, at an earlier date, proceedings for the appointment of appraisers. *Sarner* v. *Fox Hill, Inc.,* 151 Conn. 437, 444, 199 A.2d 6. There was no error in the court's refusal to find that the defendant had sustained its burden of proving that the application of the plaintiff had been "unreasonably delayed."

There is no error.

In this opinion the other judges concurred.