ROBERT O. ABBOTT ET AL. *v.* CITY OF BRISTOL

HOUSE, C. J., COTTER, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued June 6—decision released August 20, 1974

*Kenneth J. Laska,* city attorney, for the appellant (defendant).

*Maxwell Heiman,* with whom, on the brief, was *William J. Eddy,* for the appellees (plaintiffs).

COTTER, J.  In 1957, the plaintiffs purchased an eleven-room, colonial wood-frame house in the Federal Hill area of Bristol, located in a residence A zone which includes several of the city's outstanding homes and grounds.  At the time of purchase, the plaintiffs were aware that the city owned land adjoining their property on the north and west, also zoned residence A, and that their land was subject to certain rights and easements in the city "and/or" its board of water commissioners.  Both the plaintiffs' and the city's parcels of land originally had been owned by Joel Case, who sold part of his land to the plaintiffs' predecessors in title and part to The Bristol Water Company; this latter parcel of land was obtained by the city in 1911, pursuant to a special act.

Two nonconforming uses were located on the city's property in 1957:  an underground water tank, which had not been used since 1937, whose presence was not apparent by reason of its being covered by gravel, loam and lawn; and an above-ground tank, which had been in use since 1885, forty-five feet in height and thirty feet in diameter, located about 250 feet from the plaintiffs' property and visible from

their property only in the winter. The plaintiffs were aware of the existence of these nonconforming uses when they purchased their home and understood that they existed for the benefit of the city's water department.

Pursuant to a resolution of the board of finance of the city in June, 1968, at which time the location of the tank-reservoir had not been determined, the zoning board of appeals in September, 1968, granted an application to the city for a variance to erect a new tank-reservoir at the approximate site of the old underground tank. The tank-reservoir, which was completed in late 1969, was located fifty feet from the plaintiffs' property and is about twenty-four to thirty feet higher than the old above-ground tank and two and one-half times greater in diameter. It is surrounded by a cyclone fence mounted on a concrete shell which extends three-quarters of the way around its periphery and is prominently visible at all times. Upon completion of the tank-reservoir, there were then two above-ground tanks on the city's land.

Before selling their home in May, 1971, and after the city had refused to negotiate under the charter, the plaintiffs in March, 1971, applied to a judge of the Superior Court, pursuant to § 48 (c) and § 48 (e) of the charter of the city of Bristol, to appoint three disinterested persons to ascertain the alleged resultant depreciation of the plaintiffs' land. The city demurred to the petition, claiming, inter alia, that lawful use by the defendant of its property does not give a cause of action to an adjoining property owner for alleged property value depreciation. The judge to whom the application had been made overruled the demurrer. The defendant filed an answer and, after a hearing, the court granted the

plaintiffs' application and appointed a committee to assess damages. The defendant has appealed from the judgment rendered.

The defendant has assigned error in the findings and conclusions of the court in which it rejected the defendant's special defenses and found that the plaintiffs did not know, or have reason to know, that a tank-reservoir would be erected on the city's residence A abutting land and that the plaintiffs did not assume that risk when they purchased their home. The defendant also contends that the court erred in finding that the plaintiffs' land and dwelling house could have been sold at a higher price if the tank-reservoir had not been constructed in such close proximity to their property.

The issues of foreseeability and assumption of risk, insofar as they may be relevant, are ordinarily factual questions for the trier, becoming questions of law only when fair and reasonable persons could reach but one conclusion. *Starkel* v. *Edward Balf Co.,* 142 Conn. 336, 342-43, 114 A.2d 199; *Smith* v. *Leuthner,* 156 Conn. 422, 424-25, 242 A.2d 728. This proposition applies with equal force to a determination of whether actual damage has been sustained. *Dimmock* v. *New London,* 157 Conn. 9, 13, 245 A.2d 569. The facts found were supported by the evidence printed in the appendices to the briefs or were logical inferences from facts proved. *Brockett* v. *Jensen,* 154 Conn. 328, 331, 225 A.2d 190; *Frechette* v. *John Meyer of Norwich, Inc.,* 164 Conn. 559, 325 A.2d 286. The conclusions must stand if they are legally and logically consistent with the facts found unless they involve the application of some erroneous rule of law material to the case. *Consiglio* v. *Warden,* 160 Conn. 151, 157, 276 A.2d 773.

It is the claim of the defendant that the plaintiffs cannot recover consequential damages suffered by reason of the construction of the tank-reservoir unless a private property owner would have a cause of action against a private citizen on the same set of facts. The defendant's argument in its brief and its claims of law in the trial court indicate that it is attempting to analogize the facts of this case to an eminent domain proceeding wherein the settled rule is that an abutting landowner may not ordinarily recover for depreciation to land resulting from condemnation. *Benson* v. *Housing Authority,* 145 Conn. 196, 200, 140 A.2d 320; *Andrews* v. *Cox,* 129 Conn. 475, 482, 29 A.2d 587.

The city of Bristol built the tank-reservoir under the authority of its charter. The relevant sections of the charter provide, inter alia, that the city shall pay "all damages sustained by any person . . . by the taking of any land . . . or any other thing done by said city under the authority of this charter"; City of Bristol Charter, § 48 (c) (1969); and that "[s]aid city of Bristol, by its board of water commissioners . . . is authorized to enter upon any land . . . and to agree with the owner or owners of any property . . . which may be taken or damaged . . . as to the amount of compensation to be paid . . . ." City of Bristol Charter § 48 (e) (1969). Section 48 (e) further states that in the event of disagreement between the city, acting through its board of water commissioners, and the affected owner concerning the amount of compensation to be paid, either party may apply to a judge of the Superior Court to appoint three disinterested parties to examine the property "which is to be taken or damaged by said city . . . ." It also provides that these parties shall "estimate the amount of compensa-

tion which such owner shall receive," which may be confirmed by the judge who may then order the city to "pay the sum appraised . . . in full compensation for the property acquired or the injury done by said city," and that the city may proceed with the construction, after compliance with the judge's order, "without any liability to any further claim for compensation or damages . . . ."

This court has construed nearly identical language in an analogous situation. We concluded that the wording of a statute, whose language was similar to the provisions in the Bristol charter, was broad since it placed "no restriction on the type of damages to be awarded" to an adjoining landowner and we permitted the recovery of consequential damages for the depreciation of his property. *Edwards* v. *Bridgeport Hydraulic Co.*, 152 Conn. 684, 688–89, 211 A.2d 679. In the *Edwards* case, an adjoining landowner was allowed recovery against a privately-owned public service company for the depreciation of his land which resulted from the erection of a water tank. The applicable statute, General Statutes § 16-236 (Rev. 1958),[1] similarly authorized a judge of the Superior Court to appoint three disinterested parties to appraise "all damages due any person by reason of anything done under any provision of section . . . 16-235." That section "is not a condemnation statute" but "merely establishes a method of controlling the erection, by public service companies, of water tanks and other enumerated structures." *Edwards* v. *Bridgeport*

---

[1] The General Assembly amended § 16-236 in 1963 (Public Act No. 349), adding "or which is in violation of any order made under . . . [§ 16-235]." *Edwards* v. *Bridgeport Hydraulic Co.*, 152 Conn. 684, 211 A.2d 679, was decided under the statute as it appeared prior to this amendment.

*Hydraulic Co.,* supra, 688. The distinction between this and condemnation proceedings under article first, § 11, of the Connecticut constitution was recognized in *Benson* v. *Housing Authority,* supra, a case involving depreciation of the property of adjoining landowners, wherein the court noted (p. 202) that some statutes "provide a recovery for the 'taking or damage' and consequently are liberally construed to include compensation for injury akin to that charged by the plaintiffs. 2 Nichols, Eminent Domain (3d Ed.) § 6.4432[2]; *New Haven Steam Saw Mill Co.* v. *New Haven,* 72 Conn. 276, 285, 44 A. 233."

The interpretation of a statute or charter provision which authorizes recovery of "all damages" is not of recent origin in Connecticut. In *Bradley* v. *New York & N.H. R. Co.,* 21 Conn. 294, the General Assembly, by charter, authorized a railroad company to take such land as may be necessary for the proper construction of the railroad. The charter stated that the company must pay *" 'all damages that may arise to any person or persons' "* and provided that a judge of the Superior Court may appoint three disinterested persons to assess real estate *" 'taken or injured.' "* (Emphasis in original.) Id., 308. A property owner whose land abutted that taken by the railroad was allowed to recover consequential damages because the value of his land had been diminished, the court stating: "The clause . . . is very broad and unqualified in its terms, both as to the kinds of damage for which the company shall pay, and the persons who shall be paid; it embraces 'all damages,' and, therefore, not only those which are direct, but those also which are incidental; and 'damages to any person or persons' and therefore, those who are owners of land over

which the rail-road is located, as well as those who are not." Id., 310. See *Oppenheimer* v. *Connecticut Light & Power Co.,* 149 Conn. 99, 102–5, 176 A.2d 63.

The defendant would distinguish the action taken by the city under its charter on the grounds that the erection of the tank-reservoir was foreseeable by these plaintiffs and that the previously-cited cases dealt with privately-owned companies. We have already considered the issues of foreseeability and assumption of risk, and it need only be noted here that foreseeability was not a factor in those cases. The fact that the companies were privately-owned, such as the privately-owned public service water company in *Edwards* v. *Bridgeport Hydraulic Co.,* supra, is not a distinguishing factor from the case at bar since the court found from the evidence presented that in erecting the water tank, the city of Bristol, through its board of water commissioners, was engaged in a proprietary function.[2] *Hourigan* v. *Norwich,* 77 Conn. 358, 363–66, 59 A. 487; *Carta* v. *Norwalk,* 108 Conn. 697, 702, 145 A. 158; 18 McQuillan, Municipal Corporations (3d Ed. Rev.) § 53.103, p. 407. Under the circumstances of this case, like obligations and duties are imposed upon a city performing proprietary functions as are imposed upon a company when governed by comparable statutory or charter language. See *Taylor* v. *Roosevelt Irr.*

---

[2] The provisions of the Bristol charter which provide that the city "shall pay all damages sustained" by the taking of land "or any other thing done by said city under the authority of this Charter" do not appear to distinguish between actions taken by the city in its governmental as opposed to its proprietary capacity. Since the trial court found that the city was performing a proprietary function when it erected the tank-reservoir, we need not consider the question of the city's liability under these provisions when it is engaging in a governmental function.

*Dist.,* 71 Ariz. 254, 258–59, 226 P.2d 154, aff'd, 72 Ariz. 160, 163, 232 P.2d 107; *Cole Drug Co. of Massachusetts* v. *Boston,* 326 Mass. 199, 201, 93 N.E.2d 556; 18 McQuillan, op. cit.

It follows that the plaintiffs are not limited to those damages which they could recover against a private citizen on the same set of facts, but, since the right to recover damages is a creature of statute to which a liberal construction should be given; *New Haven Steam Saw Mill Co.* v. *New Haven,* 72 Conn. 276, 285, 44 A. 229; *Benson* v. *Housing Authority,* 145 Conn. 196, 202, 140 A.2d 320; they are entitled to an opportunity to prove their claim of consequential damages for the depreciation of their property resulting from the erection of the tank-reservoir. *Edwards* v. *Bridgeport Hydraulic Co.,* 152 Conn. 684, 689, 211 A.2d 679.

There is no error.

In this opinion the other judges concurred.